IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICOLE MORGAN** | : | CIVIL ACTION |
| *Individually and as Legal Guardian of* | : | |
| *T.M., a Minor* | : | NO. 21-3460 |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **VALLEY FORGE MILITARY** | : | |
| **ACADEMY & COLLEGE** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                  AUGUST 10, 2022

## MEMORANDUM OPINION

**INTRODUCTION**

This matter arises out of disciplinary action taken by Defendant Valley Forge Military Academy and College ("Defendant" or "Valley Forge")[1] against Cadet T.M.,[2] son of Plaintiff Ricole Morgan ("Morgan"), based on T.M.'s alleged involvement in an assault of another cadet. In the complaint, Morgan, acting individually and as legal guardian of T.M., asserts civil rights

---

[1] Defendant argues that Valley Forge Military Academy ("VFMA") is a private high school for boys and that Valley Forge Military College ("VFMC") is a private junior college for men and women, and that these institutions are two separate and distinct entities. Defendant further contends that T.M. is enrolled only at VFMA. However, Morgan argues that Valley Forge holds itself out as one institution. At this stage of the proceedings, this Court will treat these institutions as one entity based on the fact that the name that appears on all communications with Morgan, attached as exhibits to the complaint, is "Valley Forge Military Academy & College." [*See* ECF 1]. Ultimately, as further discussed, whether Valley Forge is one entity or two does not affect this Court's present analysis.

[2] In its motion to dismiss, Valley Forge requests that Morgan include the full name of T.M. in the caption and body of the complaint because Federal Rule of Civil Procedure ("Rule") 10(a) requires plaintiffs to identify themselves and because Morgan has not provided a reason to maintain T.M.'s anonymity. [ECF 5]. However, Valley Forge fails to recognize that Rule 5.2(a)(3) protects the privacy interests of minors by requiring parties to identify minors by their initials in court filings. Fed. R. Civ. P. 5.2(a)(3); *see also* E.D. Pa. Civ. R. 5.1.3, 12(b) ("[N]ames of minor children should be modified or partially redacted in all documents filed either in traditional paper form or electronically."). As such, Valley Forge's request is denied, and this Court will refer to Morgan's minor son by his initials.

claims (1) for violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, and (2) for breach of contract under state law.

Presently, before this Court is Valley Forge's motion to dismiss on the grounds that: (1) Valley Forge is not a state actor subject to liability under § 1983 and (2) this Court should exercise its discretion to dismiss the state-law contract claims. Plaintiff opposes the motion. For the reasons set forth herein, the motion to dismiss is granted, but this Court declines to exercise supplemental jurisdiction over the state-law claims.

**BACKGROUND**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Here, the salient facts alleged in Morgan's complaint are summarized as follows:

> Morgan is the legal guardian of T.M., an African American cadet who was enrolled at Valley Forge during the 2019–2020 academic school year. T.M. was an honor student who served in various student leadership positions, received prestigious awards, and had an "otherwise unblemished record." (Compl. ¶ 10). Valley Forge is "a private college preparatory boarding school and military junior college" that receives "federal financial assistance." (*Id.* ¶ 5).
>
> Valley Forge's 2019–20 Student Handbook provides:
>
> Valley Forge Military College strictly prohibits any form of discrimination and bias-related behaviors. VFMC is dedicated to educating students of diverse racial and ethnic origins and to fostering broad appreciation for cultural and ancestral diversity. Discrimination against any person on the basis of race, disability, age, gender, color, ethnicity, ancestry, creed, religion, sexual orientation, or national origin is against the law and violates the VFMC Community Standards.
>
> (*Id.* ¶ 8). Notwithstanding this stated policy, Morgan contends that the non-Black faculty at Valley Forge frequently referred to Black cadets, including T.M., as a

"gang," (*id.* ¶ 9a); spoke openly about trying to get rid of the "gang" of Black cadets, (*id.* ¶ 9b); and routinely referred to the "gang" as "troublemakers," (*id.* ¶ 9c).

Morgan avers that altercations among cadets occurred frequently at Valley Forge. When these altercations involved non-Black cadets, school leadership and administrators did not involve the police, but when the altercations involved Black cadets, "leadership and administrators routinely reported the incident to and sought the involvement of local law enforcement." (*Id.* ¶ 9d).

On October 30, 2020, a group of cadets assaulted a non-Black cadet who had made a racist and derogatory post on social media. T.M. was not involved in the altercation. The non-Black cadet previously had engaged in racist and discriminatory behavior, and although Valley Forge was aware of this cadet's previous actions, the school never took any disciplinary action against him.

In response to the assault of the non-Black cadet, Valley Forge immediately solicited the involvement of local police, who began to conduct interviews of cadets without notifying their parents. Despite the fact that T.M. was not involved, the morning after the assault, a Valley Forge faculty member notified Morgan that T.M. was involved in the incident "and that an investigation was underway." (*Id.* ¶ 13). Within a week, Valley Forge suspended and then dismissed T.M. "for conduct unbecoming a Cadet and conspiracy." (*Id.* ¶ 15). Morgan appealed T.M.'s dismissal on November 13, 2020, noting that T.M. "did not conspire nor participate in the events that took place on October 30." (*Id.*, Ex. D, at p. 17). On November 20, 2020, Valley Forge notified Morgan that T.M.'s dismissal had been overturned and that T.M. would be allowed to return to Valley Forge under a Suspended Dismissal status and with certain penalties, "including the loss of a Stein Scholarship, 4 months of restrictions, and a $500 fine." (*Id.* ¶ 17).

Morgan avers that Valley Forge has a history of discrimination against Black cadets, including more severe disciplinary action against Black cadets than non-Black cadets for comparable offenses. She cites, as examples, a non-Black cadet who threatened to blow up the school and was merely suspended and still allowed to remain on campus, and a non-Black cadet who spit in the face of a faculty member during a class and was allowed to remain on campus.

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss, courts must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

At the motion to dismiss stage, courts "typically may not look outside the four corners of the amended complaint." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 173 (3d Cir. 2013). However, courts may consider "documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (3d ed. 2004)).

**DISCUSSION**

As noted, Morgan asserts federal claims under § 1983 for violations of Morgan's and T.M.'s Fourteenth Amendment rights and state-law breach of contract claims. Valley Forge moves to dismiss these claims. This Court will address each type of claim separately.

*Morgan's § 1983 Claims*

At Counts I and II of her complaint, Morgan asserts claims based upon an alleged deprivation of Morgan's and T.M.'s rights under the Fourteenth Amendment. To assert a viable claim under § 1983, Morgan "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

4

acting *under color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). "The color of state law element is the threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Malapan*, 47 F.3d 628, 638 (3d Cir. 1995). Here, Valley Forge moves to dismiss Morgan's § 1983 claims on the basis that she has not alleged facts sufficient to plausibly show that Valley Forge was a state actor.

This Court recently acknowledged that "whether a defendant is acting under color of state law—*i.e.*, whether the defendant is a state actor—depends on whether there is 'such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Chetty v. Sardella*, 2022 WL 2048661, at *2 (E.D. Pa. June 7, 2022) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). In this undertaking, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the *exclusive* prerogative of the state," (2) "whether the private party has acted with the help of or in concert with state officials," and (3) "whether the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Here, Valley Forge does not qualify as a state actor under any of the tests.

The question under the first test "is whether the function performed has been traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (internal quotations omitted). This test imposes a "heavy burden" that is rarely met. *Kach*, 589 F.3d at 648; *see also Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001) (holding that the first "test imposes a rigorous standard that is rarely satisfied"). Functions held to be the exclusive

prerogative of the state include administration of elections of public officials, *Terry v. Adams*, 345 U.S. 461, 468–70 (1953), operation of a company-owned town, *Marsh v. Alabama*, 326 U.S. 501, 505–09 (1946), "the forcible removal of children from their homes," *Est. of Adam Earp v. City of Phila.*, 1997 WL 255506, at *2 (E.D. Pa. May 7, 1997), and "internal affairs investigations of police officers," *Beu v. City of Vineland*, 2020 WL 7418007, at *11 (D.N.J. Dec. 18, 2020).

The second test is "whether the private party has acted with the help of or in concert with state officials." *Kach*, 589 F.3d at 646. Under this test, "courts must ask *first* whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority; and *second*, whether the private party charged with the deprivation *could* be described in all fairness as a state actor." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1143 (3d Cir. 1995) (internal citation and quotations omitted). Examples of state action under this test include an employee conspiring with a police officer to racially discriminate against a patron, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), and a private party's joint participation with state officials to seize a disputed property, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982).

The third test is "whether the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646. In *Burton v. Wilmington Parking Authority*, the United States Supreme Court found, under this test, that a restaurant that practiced racial discrimination and was located within a public parking garage was a state actor because the state had many "obligations and responsibilities" regarding the operation of the restaurant, "mutual benefits" were conferred, and the restaurant operated "as an integral part of a public building devoted to a public parking service." 365 U.S. 714, 724 (1961). The Supreme Court later applied

the *Burton* test to a high school athletic association in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001), finding state action because a "great majority of the association's member schools were public, representatives of the schools acting in their official capacities selected members of the association's governing bodies, [and] state officials also sat on those bodies in an ex officio capacity." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 172–73 (3d Cir. 2004) (citing *Brentwood*, 531 U.S. at 298–300). Moreover, "the association was largely financed by gate receipts from member-school tournaments, and association employees participated in the state retirement system." *Id.*

In her response to Valley Forge's motion to dismiss, Morgan contends only that Valley Forge meets all three tests because it participates in the Pennsylvania Educational Improvement Tax Credit Program (the "EITC Program") and receives federal funds.[3] It is well-settled, however, that "a private entity does not become a state actor for the purpose of § 1983 simply because it . . . receives funding from the state." *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 719 (3d Cir. 2012) (citing *Rendell-Baker*, 457 U.S. at 840); *see also Richardson-Graves v. Empire Beauty Sch.*, 2015 WL 1243412, at *7 (M.D. Pa. Mar. 18, 2015) (holding that "the receipt of federal funds is not relevant to whether the defendants acted under color of state law"). In *Rendell-Baker*, the

---

[3] Morgan relies on a declaration with attached exhibits showing the financial aid available to Valley Forge students, state guidelines for schools' use of EITC Program funding, and the cost of attendance at VFMC. [ECF 8-3]. However, the declaration does not fall under any of the categories of items a court can consider at the motion to dismiss stage enumerated in *Buck*. *See* 452 F.3d at 260; *see also Woods v. Harry*, 2022 WL 493871, at *7 (M.D. Pa. Feb. 17, 2022) (declining to consider a declaration at the motion to dismiss stage); *Foster v. Crestwood Sch. Dist.*, 2017 WL 1078195, at *6 (M.D. Pa. Mar. 22, 2017) (same). The Third Circuit "has stated that an affidavit filed in opposition to a pending motion to dismiss 'clearly comprised a matter outside the pleading.'" *Steinagel v. Valley Oral Surgery*, 2013 WL 5429269, at *5 (E.D. Pa. Sept. 30, 2013) (citing *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989). As in *Steinagel*, Morgan's declaration does not form the basis of her claims but merely provides supplemental facts in support of her claims. "To the extent that the [d]eclaration seeks to add to the factual allegations contained in the [complaint], such an effort is improper." *S.E. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2016 WL 7117455, at *7 (M.D. Pa. Dec. 7, 2016) (citing *Steinagel*, 2013 WL 5429269, at *5). Thus, this Court will not consider the declaration.

Supreme Court held that a private school that educated special-needs students referred by public schools was not a state actor even though most of its operating budget was funded by the state. 457 U.S. at 840. The Court held that even if "a private entity performs a function which serves the public," that alone does not make its acts state action under the first test. *Id.* at 842. Similarly, in *Black v. Indiana Area School District*, the Third Circuit applied *Rendell-Baker* to a case in which schoolchildren sued a bus driver and a private bus company under contract with the students' public school, holding that while the bus company "and its employees were carrying out a state program at state expense, they were not performing a function that has been 'traditionally the exclusive prerogative of the state . . . .'" 985 F.2d 707, 710–11 (3d Cir. 1993).

In her complaint, Morgan has not alleged any facts to support a conclusion that Valley Forge—in its role as a private college preparatory boarding school and military junior college—performs an exclusive state function. Morgan alleges only that Valley Forge receives federal funding, which, under *Rendell-Baker*, does not transform the education provided by a private school into an exclusive state function.[4] *See also Becker v. City Univ. of Seattle*, 723 F. Supp. 2d

---

[4] Although Morgan's sole argument in support of state action is based on federal funding, and not Valley Forge's military environment, this Court notes that in *Mentavlos v. Anderson*, the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") held that "military-type training of non-enlisted students" at the Citadel, a state-supported "senior military college," was not an exclusive state function. 249 F.3d 301, 316 (4th Cir. 2001). While the specific issue before the Fourth Circuit was whether two upper-class cadets at The Citadel, and not The Citadel itself, were acting under color of state law, the court noted that "the mission of The Citadel is to educate civilian students and produce community leaders, which has never been held to be the exclusive prerogative of a State." *Id.* at 314. The court distinguished The Citadel from military service academies and instead analogized The Citadel's military model to "what many private secondary schools do: using a military model as a basis for instilling discipline and providing leadership training." *Id.* at 316.

Applying the *Mentavlos* reasoning to the facts of this case, Valley Forge—like The Citadel—simply "purports to build 'leaders of character.'" (Compl., ECF 1, ¶ 8). T.M. is a student at VFMA, Valley Forge's college preparatory school, which squarely fits the *Mentavlos* court's description of what is not state action: a private secondary school "using a military model as a basis for instilling discipline and providing leadership training." *Mentavlos*, 249 F.3d at 316. Even assuming that the college preparatory school and junior college fall under one institution, the *Mentavlos* court held that "military-type training of non-enlisted students" is not an exclusive state function. *Id.* Nothing in the complaint suggests that Valley

807, 811 (E.D. Pa. 2010) ("[The plaintiff] has failed to identify a single case in which higher education has been deemed a traditional public function, and the Court's own research has verified that none exists."). Thus, Morgan has not met the "heavy burden" of showing that Valley Forge is a state actor under the first test. *Kach*, 589 F.3d at 648.

Notably, Morgan has not identified a single case in which a private school was considered a state actor. Indeed, courts have overwhelmingly held that private schools and colleges are not state actors, irrespective of whether they receive government funding. *See, e.g.*, *Stetson Sch.*, 256 F.3d at 165 (3d Cir. 2001) ("[I]t is clear that Stetson's receipt of government funds did not make it a state actor."); *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988); *Berrios v. Inter Am. Univ.*, 535 F.2d 1330, 1332 (1st Cir. 1976) ("The district court properly refused to take into account financial assistance from the federal government in considering the presence of state action."); *Blouin v. Loyola Univ.*, 506 F.2d 20 (5th Cir. 1975); *Grafton v. Brooklyn L. Sch.*, 478 F.2d 1137 (2d Cir. 1973); *Becker*, 723 F. Supp. at 811; *Fisher v. Driscoll*, 546 F. Supp. 861, 866 (E.D Pa. 1982) ("[T]he small amount of state funds received by Villanova do not make the University's conduct state action.").

As for the second test, receipt of government funding is not sufficient to demonstrate that Valley Forge acted in concert with the state in connection with its disciplinary action against T.M. Morgan does not allege facts demonstrating that Valley Forge and the state jointly agreed to suspend, dismiss, and offer to reinstate T.M., or that any of these decisions "resulted from the exercise of a right or privilege having its source in state authority." *Mark*, 51 F.3d at 1143. Thus, Valley Forge does not meet the definition of a state actor under the second test.

---

Forge students are enlisted in the military. In short, Valley Forge is a private school, and its military model does not transform it into a state actor under the exclusive state function test.

Finally, nothing in Morgan's complaint suggests that the state has "insinuated itself into a position of interdependence" with Valley Forge, as *Kach*'s third test requires. *See* 589 F.3d at 646. Once again, Morgan's sole argument under the third test is based on federal financial assistance. Federal financial assistance, however, does not reach the degree of involvement and interdependence present in *Burton*[5] and *Brentwood*. Thus, even assuming that most of Valley Forge's operating budget is funded by the government, the government's relationship with Valley Forge is more closely analogous to the "relatively minimal interrelationship between the State and the defendants in . . . *Rendell-Baker*" than to "the complete intermingling of state and private actors found in *Burton*" and *Brentwood*. *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 101 (3d Cir. 1984). "The logic of *Rendell-Baker* . . . is that state contributions to otherwise private entities, no matter how great those contributions may be, will not of themselves transform a private actor into a state actor." *Id.* at 102. Thus, Morgan's complaint does not show a substantial enough connection between Valley Forge and the state to satisfy the definition of a state actor under the third *Kach* test.

In sum, Morgan has failed to allege sufficient facts to establish that Valley Forge could be considered a state actor for § 1983 purposes. Thus, the conduct being challenged here, as pleaded, was not undertaken "under color of law." Aside from Morgan's allegation that Valley Forge received federal financial assistance, the complaint lacks any factual allegations to support the conclusion that Valley Forge is a state actor. Accordingly, Defendant's motion to dismiss is granted with respect to all of Morgan's § 1983 claims.

---

[5] Moreover, in *Crissman v. Dover Downs Entertainment, Inc.*, the Third Circuit held that *Burton* "was crafted for the unique set of facts presented" and that the court would not "expand its reach beyond facts that replicate what was before the Court in *Burton*." 289 F.3d 231, 242 (3d Cir. 2002).

*Morgan's Request for Limited Discovery*

In her response, Morgan requests limited discovery centered on Valley Forge's alleged participation in the Pennsylvania EITC Program, the provision of financial assistance to students, and the fact that Valley Forge holds itself out as one institution, not two separate entities,[6] would uncover facts relevant to the *Kach* test for state action. Morgan further contends that in light of Pennsylvania's guidelines on school's spending of EITC Program funding, this discovery could allow this Court to "find that defendant is a recipient of federal financial assistance for purposes of Counts I and II." (Pl.'s Resp., ECF 8-1, at p. 5). However, Morgan does not set forth any allegations regarding the EITC Program in her complaint, and, on a more basic level, she is mistaken that Valley Forge's participation in a *state* tax credit program could in any way demonstrate that Valley Forge is a recipient of *federal* financial assistance. Moreover, as discussed above, no amount of government funding, state or federal, will convert Valley Forge—a private school—into a state actor. As such, this Court denies Morgan's request for limited discovery.

*Leave to Amend*

The Third Circuit has directed district courts to provide a civil rights plaintiff with an opportunity to file an amended complaint when the operative complaint is subject to dismissal under Rule 12(b)(6), "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. The facts set forth in Morgan's complaint fail, as a matter of law, to establish that Valley Forge is a state actor for § 1983 purposes. This Court cannot foresee any additional facts

---

[6] As noted, Valley Forge asserts that the college preparatory school and junior college are two separate and distinct entities. It further asserts that cadets at the college preparatory school are not eligible for federal or state student aid, grants, or loans. As discussed, this Court is treating Valley Forge as one entity. Under the *Kach* state actor test, the amount of government funding, if any, is irrelevant to the determination of state actor. Therefore, discovery as to whether Valley Forge holds itself out as one institution or two would not affect this Court's analysis.

11

that could convert Valley Forge, a private school, into a state actor. It is this Court's view, therefore, that any attempt to amend the complaint would be futile.

### *Morgan's Breach of Contract Claim*

Morgan also asserts a state-law claim for breach of contract. Supplemental jurisdiction affords federal courts the power to decide state-law claims that derive from a common nucleus of operative fact with claims that arise under federal law. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). However, the court may decline to exercise supplemental jurisdiction over state-law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). Indeed, the Third Circuit has directed that district courts "'*must* decline' to exercise supplemental jurisdiction in such circumstances 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Stone v. Martin*, 720 F. App'x 132, 135 (3d Cir. 2017) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)) (emphasis in original).

For the reasons set forth, Valley Forge's motion to dismiss Morgan's federal claims—the only claims over which this Court has original jurisdiction—is granted. Therefore, in accordance with 28 U.S.C. § 1367(c)(3) and the Third Circuit's directive, and because there is no affirmative justification to do otherwise, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

**CONCLUSION**

For the reasons set forth above, Valley Forge's motion to dismiss Morgan's claims under 42 U.S.C. § 1983 is granted. Having dismissed Morgan's federal claims, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims and will dismiss these

without prejudice.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.